**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| STACI B.,[1] | : | Case No. 2:24-cv-1886 |
| | : | |
| Plaintiff, | : | District Judge James L. Graham |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**REPORT AND RECOMMENDATIONS[2]**

Plaintiff Staci B. brings this case challenging the Social Security Administration's denial of her applications for Disability Insurance Benefits and Supplemental Security Income. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #10), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), and the administrative record. (Doc. #7).

**I.      Background**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

[2] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

In the present case, Plaintiff protectively filed her applications for Disability Insurance Benefits and for Supplemental Security Income on October 8, 2021, alleging disability due to several impairments, including "left torn rotator cuff, bicep relocated on left arm to armpit, degenerative disc, two bulging disc[s], anxiety, left knee, [and] carpal tunnel on left." (Doc. #7-6, *PageID* #408). After Plaintiff's applications were denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Irma Flottman. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[3] She reached the following main conclusions:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful activity since December 8, 2017, the alleged onset date. |
| Step 2: | She has the following severe impairments: degenerative disc disease, herniated nucleus pulposus, and spinal stenosis of the lumbar spine with lumbar radiculopathy; arthropathies status post left rotator cuff repair; hypertension; cellulitis; and morbid obesity. |
| Step 3: | She does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | Her residual functional capacity ("RFC"), or the most she can do, despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work… except no climbing ladders, ropes, and scaffolds; occasional stooping, kneeling, crouching, crawling, and climbing ramps and stairs; and frequent reaching in all directions with the left upper extremity. She should avoid concentrated exposure to extreme cold, extreme heat, and humidity, and all exposure to hazards such as unprotected heights, dangerous equipment, and commercial driving." |

---

[3] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

>                    She is unable to perform her past relevant work as a warehouse worker or a forklift operator.
>
> Step 5:            Considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers that she can perform in the national economy, such as an order clerk, screener or copy examiner.

(Doc. #7-2, *PageID* #s 119-27).  Based on these findings, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from December 17, 2017, though the date of the decision, May 17, 2023.  *Id.* at 127-28.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7-2, *PageID* #s 117-28), Plaintiff's Statement of Errors (Doc. #10), the Commissioner's Memorandum in Opposition (Doc. #11), and Plaintiff's Reply (Doc. #12).  To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.     Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record.

3

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**III.** **Discussion**

In her sole assignment of error, Plaintiff argues that the ALJ erred in her analysis of the opinion of her primary care physician, Monica Grygo, M.D. (Doc. #10, *PageID* #s 1425-30).

In response, the Commissioner maintains that the ALJ properly assessed Dr. Grygo's opinion's supportability and consistency, contending that Dr. Grygo's medical statement was essentially a "checkbox form" unsupported by Dr. Grygo's treatment records and inconsistent with the record as a whole. (Doc. #11, *PageID* #s 1436-40).

Since Plaintiff filed her applications after March 27, 2017, they are governed by the regulations describing how evidence is categorized, considered, and articulated when a residual functional capacity is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c (2017). A plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A plaintiff's RFC assessment must be based on all the relevant evidence in her case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an

ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. § 404.1520c(b)(2).

While these regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No.

5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). At bottom, the regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)). An "ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Id.*

On August 18, 2022, Dr. Grygo completed a Primary Care Medical Statement, where she answered questions regarding Plaintiff's abilities and limitations. (Doc. #7-7, *PageID* #s 1144-45). Dr. Grygo reported that she had treated Plaintiff for chronic left sided low back pain with sciatica and panic attacks. *Id.* She opined Plaintiff would be limited to about two hours of sitting and two hours of standing/walking during an eight-hour workday. *Id.* She determined that Plaintiff would need a job that allowed her to shift positions from standing, sitting, or walking at will, and that Plaintiff would require walking up to 15 minutes every 60 to 90 minutes throughout the workday. *Id.* She noted that Plaintiff would require one or two unscheduled breaks per month, lasting 30 to 60 minutes, for her panic attacks. *Id.* Dr. Grygo concluded that Plaintiff would be off task for 5% of the workday due to her impairments, would have good days and bad days, and would be absent about three days per month. *Id.*

Upon review, the ALJ ultimately found Dr. Grygo's opinion to be less persuasive. (Doc. #7-2, *PageID* #125). She determined that Dr. Grygo's opinion was not well supported by citations to the evidence and was inconsistent with the treatment records. *Id.* The ALJ cited to some of

6

Plaintiff's treatment records from 2022 that indicated "good control over the claimant's pain with her spinal cord stimulator and Lyrica." *Id.* (citing Doc. #7-7, *PageID* #s 1122, 1212).

Plaintiff contends that this analysis ignores Dr. Grygo's treatment records and improperly focused only on the medical source statement for the supportability factor. (Doc. #10, *PageID* #s 1426-27). Additionally, Plaintiff argues that the ALJ failed to make a sufficient analysis for the consistency factor by only citing to two records in finding Dr. Grygo's opinion less persuasive. *Id*. at 1427-1430.

Plaintiff's argument is not well-taken for several reasons. First, courts in the Sixth Circuit have found that checkbox forms lack supportability when "the doctor provides little or no accompanying explanation for the assessed limitations." *Marks v. Comm'r of Soc. Sec.*, No. 1:16-cv-02848, 2018 WL 1801609, at *8 (N.D. Ohio Jan 12, 2018) (citing *Kepke v. Comm'r of Soc. Sec.*, F. App'x 625, 630 (6th Cir. 2016); *see also Melanie E. S. v. Comm'r of Soc. Sec.*, No. 2:22-CV-2373, 2022 WL 17484355, at *5 (S.D. Ohio Dec. 7, 2022) (Vascura, M.J.) (citing additional cases). Even in cases where the ALJ did not specifically address an opinion as a checkbox opinion, courts have found this to be a sufficient reason to discount a medical opinion's supportability. *Laney v. Comm'r of Soc. Sec.*, No. 5:21-CV-01290-CEH, 2022 WL 2176539, at *6, n.2 (N.D. Ohio June 16, 2022). As the ALJ noted, Dr. Grygo in her Primary Care Medical Statement did not cite to any evidence in her treatment notes to support her limitations, merely giving February 11, 2021, as the earliest date that her limitations would apply based on her records. (Doc. #7-2, *PageID* #125); (Doc. #7-7, *PageID* #s 1144-45). Furthermore, in a section of the medical statement that asked Dr. Grygo to "[i]dentify the clinical findings and objective signs that support the severity of

7

your patient's symptomatology and your opinions herein," she left the space blank. *Id*. at 1144-45; *Murray v. Comm'r of Soc. Sec.*, No. 2:21-CV-2078, 2021 WL 6063289, at *4 (S.D. Ohio Dec. 22, 2021) (Vascura, M.J.) (affirming the ALJ's supportability analysis where the physician did not support his opined limitations in the medical source statement itself). Therefore, the ALJ did not err in finding Dr. Grygo's opinion unsupported. (Doc. #7-2, *PageID* #125).

Furthermore, the ALJ did not err in finding Dr. Grygo's opinion less persuasive because her opinion is inconsistent with the medical record. (Doc. #7-2, *PageID* #s 125). While the ALJ only cited to two records in her paragraph analysis of Dr. Grygo's opinion, the ALJ's decision contains substantial evidence to support the ALJ's conclusion. *Id*. at 123-25; *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("When viewed as a whole, however, the ALJ's decision shows that she indeed weighed all of the mental-health opinions presented to her ... the ALJ's opinion on a whole was consistent with the regulations."). First, the ALJ cited to other treatment records that demonstrated that Plaintiff's back pain had become more manageable with a spinal cord stimulator, including a reduction of pain to 2/10, 80% reduction in her pain, and examinations with intact sensation, normal range of motion, and 5/5 strength. *Id*. at 124 (citing Doc. #7-7, *PageID* #s 634, 1103, 1218). Similarly, an April 2022 treatment record also indicates that Plaintiff experienced greater pain when "she accidently lets the battery [of the spinal cord stimulator] turn off." (Doc. #7-7, *PageID* #1113). Finally, the ALJ did not ignore parts of the record, citing to Plaintiff's pain waxing and waning at different points in the record, her reported increases in back pain, her breakthrough pain even while medicated, Plaintiff's reported reduction of Lyrica's benefit, and signs of tenderness to palpitation on some examinations. (Doc. #7-2,

8

PageID #123-25) (citing Doc. #7-7, *PageID* #s 551, 1103, 1122, 1367, 1372; Doc. #7-8, *PageID* #s 1408-12). In fact, the ALJ specifically accounted for these records of increased back pain in finding Plaintiff only capable of sedentary work instead of the light work the state agency medical consultants opined. (Doc. #7-2, *PageID* #126) (citing Doc. #7-8, *PageID* #s 1408-12). While Plaintiff contends the ALJ ignored parts of the record, "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 467 (6th Cir. 2004). Therefore, the ALJ did not err in her finding that Dr. Grygo's medical statement was inconsistent with the medical treatment in the record.

Finally, Plaintiff contends that the ALJ did not consider the record as a whole because Dr. Grygo's treatment records of Plaintiff's anxiety and panic attacks supported her opinion. (Doc. #12, *PageID* #1444). However, the ALJ found Plaintiff's generalized anxiety with panic attacks to be a non-severe impairment. (Doc. #7-2, *PageID* #120). She specifically cited to Dr. Grygo's treatment records of Plaintiff's anxiety in her assessment that Plaintiff had "no specialized mental health treatment[,]" "her medications … have been managed by her primary care provider," and she had a "minimal mental health treatment record." *Id*. at 121, 125 (citing Doc. #7-7, *PageID* #s 778, 784, 905, 1032; Doc. #7-8, *PageID* #s 1250, 1408-12). Finally, the ALJ found consultive psychological examiner, Dr. Christopher Ward, Ph.D.'s opinion that Plaintiff had no difficulty in "managing pressure" persuasive because of his "specific citation to objective examination findings" and consistency with her minimal mental health treatment. (Doc. #7-2, *PageID* #125). Thus, contrary to Plaintiff's argument, the ALJ did consider Dr. Grygo's treatment records for

9

Plaintiff's anxiety and panic attacks, but did not find them consistent with Dr. Grygo's opined limitations.

In sum, "It is the ALJ's duty, not the Court's, to resolve conflicts in the medical evidence, and the Court must uphold the ALJ's decision if it is supported by substantial evidence, even when there is substantial evidence to support the opposite conclusion or a reviewing court would resolve the issues of fact differently." *See Sandra B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-960, 2022 WL 444724, at *8 (S.D. Ohio February 14, 2022) (Litkovitz, M.J.) (citing *Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 398 (6th Cir. 2016)). Here, substantial evidence supported the ALJ's resolution of the conflict in the medical opinions.

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be **AFFIRMED**; and
2. The case be terminated on the Court's docket.

July 29, 2025                       *s/ Peter B. Silvain, Jr.*
                                                   Peter B. Silvain, Jr.
                                                   United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).